IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MIDDLE EAST BROADCASTING        )
NETWORKS, INC.,                 )
                                )
    Plaintiff,                  )
                                )          Case No.: 1:14-cv-01207-GBL-IDD
    v.                          )
                                )
MBI GLOBAL, LLC,                )
                                )
    Defendant.                  )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff/Counterdefendant Middle East Broadcasting Networks, Inc.'s ("MEBN") Motion for Summary Judgment (Doc. 31). This case concerns MEBN's claim that Defendant/Counterclaimant MBI Global, LLC ("MBI"), breached a contract between the parties when it failed to timely deliver and install a Blast Resistant Building ("BRB") to MEBN's Baghdad, Iraq office. The issue before the Court is whether the Court should grant MEBN's Motion for Summary Judgment on (1) MEBN's breach of contract claim, (2) MEBN's unjust enrichment claim, (3) MBI's breach of contract claim, and (4) MBI's breach of the implied covenant of good faith and fair dealing claim.

The Court GRANTS MEBN's Motion for Summary Judgment for two reasons. First, the Court GRANTS MEBN's Motion for Summary Judgment on MEBN's breach of contract claim and MBI's breach of contract claim because MBI failed to timely deliver and install the BRB at MEBN's Baghdad office and the force majeure contract provision does not apply. Second, the Court GRANTS MEBN's Motion for Summary Judgment on MBI's breach of the implied covenant of good faith and fair dealing claim because Virginia law does not recognize an

independent cause of action for this claim. The Court DENIES MEBN's Motion for Summary Judgment as to its unjust enrichment claim because an unjust enrichment claim cannot be brought in the face of an express contract.

## I. BACKGROUND

MEBN is a broadcasting company that provides news and information, in Arabic, to countries in the Middle East and North Africa. (Compl. ¶ 1.) "[MEBN's] mission is to provide objective, accurate, and relevant news and information to the people of the Middle East about the region, the world, and the United States." (*Id.* ¶ 5.) MEBN is fully-funded by the United States government. (*Id.*) Though headquartered in Springfield, Virginia, MEBN also has branches in Dubai, Beirut, Jerusalem, Cairo, Washington, D.C., and Baghdad. The Baghdad office has been open since 2004 and employs 77 news professionals, technicians, and administrative staff. (*Id.* ¶ 6.)

Since its opening, the Baghdad office rented space in the Palestine Hotel. (*Id.* ¶ 7.) In 2013, after facing eviction from the Palestine Hotel space for reasons not relevant here, MEBN rented office space elsewhere. (*Id.* ¶ 9.) However, this space was insufficient because it did not have space for a television studio. (*Id.*) MEBN decided to buy a BRB where it could assemble and house a television studio. (*Id.* ¶ 10.) MEBN sent out a Request for Quote ("RFQ") to various American manufacturers for suitable BRBs, noting that delivery and installation of the BRB in Baghdad was to be done by December 31, 2013. (*Id.* ¶¶ 10–11.) According to MEBN, the companies submitting quotes for the BRB knew that timing was being driven by MEBN's pending eviction from the Palestine Hotel and that it was "critical[ly] important" that MEBN's Baghdad news operation continue unabated. (*Id.* ¶ 12.)

2

MBI received MEBN's RFQ.  MBI billed itself as an expert "in the construction of BRBs" and as an "expert in the delivery of BRBs to locations in the Middle East."  (*See* Doc. 32-2 at 266.)  On September 23, 2013, MEBN and MBI entered into a contract ("the Agreement"), under which MEBN was to pay $473,611 to MBI and MBI was to deliver and install the BRB at MEBN's Baghdad office.  (*See* Doc. 32 ¶ 6; Doc. 32-3.)  The Agreement required delivery and installation of the BRB by December 31, 2013.  (Doc. 32 ¶ 6.)  The Agreement also required MBI to prepare a notarized progress report to accompany each invoice.  MEBN had no obligation to pay MBI until it received the proper invoices from MBI.  (*Id.* ¶ 9.)  Finally, the Agreement included a waiver clause, which provided that "(n)either party's failure to enforce, nor waiver of, any right or term hereof, shall be considered a continuing waiver of any of that party's rights or right to enforce said term."  (Doc. 32-3 at 14, ¶ 19.)

On September 24, 2013, MBI prepared a progress report and invoice that conformed to the agreement.  MBI submitted these documents to MEBN and requested a $187,001 down payment, which MEBN tendered on October 2, 2014.  (Doc. 32 ¶ 12.)  MBI failed to submit any additional progress reports or invoices to MEBN.  (*Id.*)

According to the Agreement, the BRB was to be delivered to MEBN in Baghdad by December 31, 2013.  On December 6, 2013, MBI represented that the delivery date would be met.  However, on December 20, 2013, MBI informed MEBN that the manufacture, delivery, and installation of the BRB were four-to-five weeks behind schedule.  (*Id.* ¶ 22–23.)  MBI estimated that the new delivery date would be in late-February or early-March, which is eight-to-eleven weeks after the original due date.  (*Id.* ¶ 27.)  The BRB was not delivered by December 31, 2013.

On January 23, 2014, the parties executed an Amendment to the Agreement ("First Amendment"), under which MBI agreed to manufacture, deliver, and install the BRB at MEBN's Baghdad office by April 16, 2014. (*Id.* ¶¶ 29, 32.) The First Amendment included a $100,000 credit to MEBN and shifted to MBI the risk of loss of the BRB. (*Id.* ¶¶ 30–31.) On April 10, 2014, MBI informed MEBN that the April 16th deadline would not be met. (*Id.* ¶ 35.) On April 15, 2014, MBI sent a revised delivery schedule to MEBN, including a new deadline of June 3, 2014, for the delivery and installation of the BRB. MBI also missed this deadline. (*Id.* ¶¶ 36–38.) However, MBI sent MEBN photos of what appeared to be a completed BRB. (*Id.* ¶ 40.)

On July 3, 2014, MEBN extended a final written offer to MBI ("July 3rd Letter"). The offer stated that MEBN would accept delivery of the BRB at its Baghdad office provided that the delivery was completed by August 3, 2014. (*Id.* ¶ 41.) The offer also stated that the August 3rd deadline was not flexible and that it "would not be waived or excused for any reason whatsoever." (Doc. 32-19.) MBI accepted this offer in writing on July 7, 2014. (Doc. 32 ¶ 42.)

MBI failed to deliver the BRB by August 3, 2014. MBI claims that it was unable to deliver the BRB because the delivery routes were blocked due to the ongoing conflict involving ISIS, invoking a "force majeure" defense. (Doc. 39 ¶ 47.)

On September 11, 2014, MEBN filed this case against MBI, asserting claims of breach of contract and unjust enrichment. On December 19, 2014, MBI asserted counterclaims of breach of contract and breach of the implied covenant of good faith and fair dealing against MEBN. On May 22, 2015, MEBN filed a Motion for Summary Judgment as to all claims. That motion is now before the Court.

4

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine issue of material fact for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Res. Bankshares*

*Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**B. Analysis**

The Court GRANTS MEBN's Motion for Summary Judgment for two reasons. First, the Court GRANTS MEBN's Motion for Summary Judgment on MEBN's breach of contract claim and MBI's breach of contract claim because MBI failed to timely deliver and install the BRB at MEBN's Baghdad office and the force majeure contract provision does not apply. Second, the Court GRANTS MEBN's Motion for Summary Judgment on MBI's breach of the implied covenant of good faith and fair dealing claim because Virginia law does not recognize an independent cause of action for this claim. The Court DENIES MEBN's Motion for Summary Judgment as to its unjust enrichment claim because an unjust enrichment claim cannot be brought in the face of an express contract.

1. Breach of Contract

The Court GRANTS MEBN's Motion for Summary Judgment on MEBN's breach of contract claim and MBI's breach of contract claim because MBI failed to timely deliver and install the BRB at MEBN's Baghdad office and the force majeure contract provision does not apply. To prove a breach of contract claim, a party must prove the existence of the following elements: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Filak v. George*, 267 Va. 612, 619 (2004).

6

MBI's breach of contract argument is premised on the notion that MEBN breached a contract it created in settlement discussions.  However, because the Court granted MEBN's Motion in Limine to Exclude Confidential Settlement Communications under FED. R. EVID. 408, (*see* Doc. 47), MBI's claim is baseless and summary judgment in MEBN's favor must be granted.

With regard to MEBN's breach of contract claim, at oral argument the parties agreed that the final offer contained in the July 3rd Letter was the operative agreement for the breach of contract analysis.  The parties do not dispute that MBI breached the contract contained in the July 3rd Letter when it failed to deliver and install the BRB by August 3, 2014.  However, the parties do dispute whether MBI's nonperformance is excused as MBI asserts force majeure as an affirmative defense.  MBI asserts that ISIS' blocking of delivery routes implicates the force majeure provision.  The Agreement's force majeure provision provides as follows:

> Additionally, delivery of Client's building, or performance of MBI's obligations, may be affected by matters outside the control of either party, such as war, weather, and acts of God. In some cases, certain governmental or regulatory approvals or inspections are required either prior to production or prior to delivery.  In calculating the date of delivery, MBI estimates a reasonable period of time in which such approvals are ordinarily granted; however, MBI has no control over these matters and MBI reserves the right to adjust the delivery date accordingly. Specified delivery dates may be changed by Client only pursuant to the Change Order provisions set forth in Section 7 herein.

(Doc. 32-3 ¶ 9).  The Court finds that the force majeure clause is inapplicable for two reasons: (1) the sole reason MBI failed to timely deliver the BRB is because it failed to pay a subcontractor, not because of any effects of a war; and (2) the force majeure provision was superseded by language in the July 3rd Letter that stated that the August 3, 2014 deadline had to be met, no exceptions.

First, the force majeure clause is inapplicable because Philip Moore, President of MBI during the time period relevant to this litigation, testified that the *sole* reason for MBI's failure to deliver the BRB was because MBI did had not paid a subcontractor.  As Moore testified:

> Q: The . . . failure of MBI to take the BRB from Turkey and deliver and install it in Baghdad, Iraq in July or August of 2014 was solely because RB Group failed to or refused to release the BRB to MBI's transporter company due to MBI's failure to pay RB Group moneys that were owed on other contracts?
>
> A: Yes.

(Doc. 32 ¶ 43.)  Because MBI's failure to pay a subcontractor is not a reason for nonperformance under the Agreement's force majeure provision, the Court finds that the force majeure provision is inapplicable.

Second, assuming that the Court found that the ISIS conflict implicated the force majeure provision, the Court finds that the terms of the July 3rd Letter supersede the force majeure provision.  Courts must construe contracts as they are written. *Christopher Assocs. v. J.C. Sessoms, Jr.*, 245 Va. 18, 22 (1993).  "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *W.F. Magann Corp. v. Virginia–Carolina Elec. Works, Inc.*, 203 Va. 259, 264 (1962).

The offer in the July 3rd Letter, which was accepted in writing by MBI, contained a provision that the August 3rd deadline was not flexible, stating that it "*would not be waived or excused for any reason whatsoever.*"  (Doc. 32-19) (emphasis added).  The Court finds that the plain language of the July 3rd Letter controls the contract and supersedes the force majeure provision.  Because that language renders the force majeure language obsolete, the force majeure clause is inapplicable.

In sum, there is no genuine issue of material fact as to the breach of contract claims because MBI failed to timely deliver and install the BRB and the force majeure provision is inapplicable. Accordingly, the Court finds that MEBN's Motion for Summary Judgment on the parties' breach of contract claims must be GRANTED.

### 2. Implied Covenant of Good Faith and Fair Dealing

The Court GRANTS MEBN's Motion for Summary Judgment on MBI's breach of the implied covenant of good faith and fair dealing claim because Virginia law does not recognize an independent cause of action for this claim. "In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citations omitted). The implied covenant of good faith and fair dealing "simply bars a party from 'acting in such a manner as to prevent the other party from performing his obligations under the contract.'" *De Vera v. Bank of Am., N.A.*, Civil Action No. 2:12cv17, 2012 WL 2400627, *3 (E.D. Va. June 25, 2012) (quoting *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir. 2000)).

Here, the record evidence shows that MBI breached the contract by failing to timely deliver and install the BRB, in part because MBI failed to compensate a subcontractor. Because the Court finds that MBI failed to establish a genuine issue of material fact as to whether MEBN acted in a manner to prevent MBI from performing its obligations under the contract, MEBN's Motion for Summary Judgment on this claim must be GRANTED.

### 3. Unjust Enrichment

The Court DENIES MEBN's Motion for Summary Judgment as to its unjust enrichment claim because an unjust enrichment claim cannot be brought in the face of an express contract. In Virginia, in order to succeed on a claim of unjust enrichment, MEBN must prove: (1) MEBN

9

conferred a benefit on MBI; (2) MBI knew of the benefit and should reasonably have expected to repay MEBN; and (3) MBI accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008) (citations omitted). However, "an action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract." *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) (citations omitted).

At oral argument, MEBN and MBI conceded that an express contract existed. Accordingly, MEBN's unjust enrichment claim must fail as a matter of law.

## III. CONCLUSION

The Court GRANTS MEBN's Motion for Summary Judgment for two reasons. First, the Court GRANTS MEBN's Motion for Summary Judgment on MEBN's breach of contract claim and MBI's breach of contract claim because MBI failed to timely deliver and install the BRB at MEBN's Baghdad office and the force majeure provision does not apply. Second, the Court GRANTS MEBN's Motion for Summary Judgment on MBI's breach of the implied covenant of good faith and fair dealing claim because Virginia law does not recognize an independent cause of action for this claim. The Court DENIES MEBN's Motion for Summary Judgment as to its unjust enrichment claim because an unjust enrichment claim cannot be brought in the face of an express contract.

Accordingly, it is hereby

**ORDERED** that MEBN's Motion for Summary Judgment (Doc. 31) is **GRANTED IN PART** as to MEBN's breach of contract claim, MBI's breach of contract claim, and MBI's breach of the implied covenant of good faith and fair dealing claim; it is further

10

**ORDERED** that MEBN's Motion for Summary Judgment (Doc. 31) is **DENIED IN PART** as to MEBN's unjust enrichment claim; it is further

**ORDERED** that the jury trial scheduled for August 10–12, 2015, will be solely on the issue of damages.

**IT IS SO ORDERED**.

ENTERED this 28th day of July, 2015.

Alexandria, Virginia
7/ 28 / 2015

/s/
Gerald Bruce Lee
United States District Judge